**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

|  |  |
|---|---|
| TIVO INC., a Delaware Corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>VERIZON COMMUNICATIONS INC.,<br> a Delaware Corporation,<br>VERIZON SERVICES CORP.,<br> a Delaware Corporation, and<br>VERIZON CORPORATE RESOURCES<br>GROUP LLC,<br> a Delaware limited liability company,<br><br>    Defendants. | Civil Action No. 2:09-cv-257-DF |

## MOTION TO TRANSFER VENUE TO THE DISTRICT OF NEW JERSEY

March 2, 2010

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

I.  STATEMENT OF ISSUES ............................................................................1

II. INTRODUCTION ..........................................................................................1

III. FACTS .........................................................................................................4

IV. ARGUMENT ................................................................................................9

    A.    This Action "Might Have Been Brought" in the District of New Jersey....................11

        1.a.    VCI Is Subject to Personal Jurisdiction in New Jersey ..................................13

        1.b.    Verizon Services Corp. Is Subject to Personal Jurisdiction in New Jersey .................................................................................................16

        1.c.    Verizon Corporate Resources Group LLC Is Subject to Personal Jurisdiction in New Jersey .................................................................16

    B.    Each of the Private Interest Factors Strongly Favors Transfer to the District of New Jersey.................................................................................................17

        1.    The Convenience of the Parties and Witnesses Strongly Favors Transfer................................................................................................17

        2.    The Availability of Compulsory Process To Secure the Attendance of Witnesses Favors Transfer......................................................21

        3.    The Relative Ease of Access to Sources of Proof Favors Transfer ..........................................................................................................22

        4.    No Practical Problems Exist with Transferring this Case .............................23

    C.    The Public Interest Factors Favor Transfer to the District of New Jersey    ........................................................................................................27

        1.    The Interest in Having Local Interests Decided at Home Strongly Favors Transfer................................................................................27

        2.    The Remaining Public-Interest Factors Are Neutral ....................................29

V.  CONCLUSION...............................................................................................30

# TABLE OF AUTHORITIES

## FEDERAL CASES

*3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373 (Fed. Cir. 1998) ..........................................12

*Acer, Inc. v. Technology Props. Ltd.*, Nos. C-08-877 JF, C 08-882,
     2009 WL 279330 (N.D. Cal. Feb. 4, 2009) ....................................................................27

*Akro Corp. v. Luker*, 45 F.3d 1541 (Fed. Cir. 1995) ............................................................13, 14

*Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208 (5th Cir. 2000) ................................................15

*ATEN Int'l Co. v. Amine Tech., Co.*, 261 F.R.D. 112 (E.D. Tex. 2009)..........10, 19, 20, 22, 23, 28

*Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F. Supp. 2d 546 (E.D. Tex. 2009)....11, 13

*Beam Laser Sys., Inc. v. Cox Communications, Inc.*, 117 F. Supp. 2d 515 (E.D. Va. 2000) ........18

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985) ........................................................................13

*Cellularvision Tech. & Telecomms., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186
     (S.D. Fla. 2007)..................................................................................................................18

*Chirife v. St. Jude Med., Inc.*, No. 6:08 CV 480, 2009 WL 1684563
     (E.D. Tex. June 16, 2009) ............................................................................................11, 12

*ConnecTel, LLC v. Cisco Sys., Inc.*, No. 2:04-CV-396, 2005 WL 366966
     (E.D. Tex. Feb. 16, 2005) ...............................................................................26, 27, 28, 29

*Continental Grain Co. v. Barge FBL-585*, 365 U.S. 19 (1960).....................................................9

*Cummins-Allison Corp. v. Glory Ltd.*, No. 2:03-CV-358TJ, 2004 WL 1635534
     (E.D. Tex. May 26, 2004)...................................................................................................18

*Ellis v. Great Sw. Corp.*, 646 F.2d 1099 (5th Cir. 1981) ............................................................12

*Fifth Generation Computer Corp. v. IBM*, No. 9:08-CV-205, 2009 WL 398783
     (E.D. Tex. Feb. 17, 2009) ...................................................................................................30

*Frederick v. Advanced Fin. Solutions, Inc.*, 558 F. Supp. 2d 699 (E.D. Tex. 2007) ....................11

*Furmanite Am., Inc. v. Durango Assocs., Inc.*, 662 F. Supp. 348 (E.D. Va. 1986) .......................27

*Genentech, In re*, 566 F.3d 1338 (Fed. Cir. 2009)......................................11, 17, 19, 20, 21, 22, 30

*Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382 (Fed. Cir. 1998) ..................12

*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408 (1984)...........................................14

*Hoffmann-La Roche Inc., In re*, 587 F.3d 1333 (Fed. Cir. 2009) ......................................21, 28, 29

*Horseshoe Entm't, In re*, 337 F.3d 429 (5th Cir. 2003)................................................................11

*ICU Med., Inc. v. Rymed Techs., Inc.*, No. 07-468-JJF, 2008 WL 205307
    (D. Del. Jan. 23, 2008) ...........................................................................................................27

*IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir. 1998) .......................................................12

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ...................................................12, 13

*Kelley v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841 (5th Cir. 2000) ....................................15

*LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369 (Fed. Cir. 2000)..................................13

*MedioStream, Inc. v. Microsoft Corp.*, No. 2:08CV3690, 2009 WL 3161380
    (E.D. Tex. Sept. 30, 2009) ................................................................................................22, 29

*Milliken v. Meyer*, 311 U.S. 457 (1941) ......................................................................................13

*Mink v. AAAA Dev. LLC*, 190 F.3d 333 (5th Cir. 1999) ...............................................................13

*Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, No. 3:02-CV-2538,
    2003 WL 21251684 (N.D. Tex. May 23, 2003) ......................................................................18

*Micron Tech., Inc. v. Mosaid Techs.*, 518 F.3d 897 (Fed. Cir. 2008)...........................................27

*Nintendo, Co., In re*, 589 F.3d 1194 (Fed. Cir. 2009).................................1, 10, 11, 17, 21, 22, 29

*Odom v. Microsoft*, 596 F. Supp. 2d 995 (E.D. Tex. 2009)...........................................................21

*Phonetel Communications, Inc. v. U.S. Robotics Corp.*, No. 4:00-CV-1750,
    2001 WL 36082631 (N.D. Tex. June 1, 2001) ........................................................................15

*Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459 (Fed. Cir. 1998) ...........................15

*Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338 (5th Cir. 2002) ..........................................13

*Rembrandt Technologies, L.P. v. Comcast Corp.*, No. 2:05CV443, 2007 WL 470631
    (E.D. Tex. Feb. 8, 2007) .................................................................................................3, 23, 24

*Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002).................................................................12

*RF Delaware, Inc. v. Pacific Keystone Techs., Inc.*, 326 F.3d 1255 (Fed. Cir. 2003)..................26

*Semiconductor Energy Lab. Co. v. Samsung Elecs., Co.*, No. 09-cv-1-bbc,
    2009 WL 1615528 (W.D. Wis. June 9, 2009) ....................................................27

*SMDK Corp. v. Creative Labs, Inc.*, No. 2:08-CV-26, 2009 WL 5246368
    (E.D. Tex. Dec. 11, 2009).......................................................................2, 21

*Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763 (5th Cir. 1988) .........................................15

*Storage Tech. Corp. v. Cisco Sys. Inc.*, 329 F.3d 823 (Fed. Cir. 2003)........................................10

*TiVo Inc. v. Echostar Communications Corp.*, 516 F.3d 1290 (Fed. Cir. 2008) ...............25, 26, 27

*TS Tech USA Corp., In re*, 551 F.3d 1315 (Fed. Cir. 2008) ........................................10, 28, 29, 30

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) ......................................................................9

*Volkswagen AG, In re*, 371 F.3d 201 (5th Cir. 2004) ...........................................10, 18, 19, 20, 28

*Volkswagen of Am., Inc., In re*, 545 F.3d 304 (5th Cir. 2008) .....................................10, 11, 19, 29

## STATUTES AND RULES

28 U.S.C. § 1391(c) .................................................................................16

28 U.S.C. § 1400(b) ................................................................................16

28 U.S.C. § 1404(a) ...............................................1, 9, 10, 11, 12, 17, 18, 19, 27

28 U.S.C. § 1406(a) ................................................................................12

Fed. R. Civ. P. 12(b) ...............................................................................12

Local Rule CV-7(a)(1)...............................................................................1

Local Rule CV-7(g) ..................................................................................1

Model Rules of Prof. Conduct 1.7(a)(1) .........................................................24

## <u>OTHER AUTHORITIES</u>

15 Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 3849 (3d ed. 1986)...................18

Administrative Office of the United States Courts, Federal Judicial Caseload Statistics .......29, 30

For the convenience of the parties and witnesses, and in the interest of justice, Verizon Communications Inc. ("VCI"), Verizon Services Corp. ("Services Corp."), and Verizon Corporate Resources Group LLC ("Corporate Resources Group") (collectively, "Defendants") hereby move this Court for an order transferring this case to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a).  Pursuant to Local Rule CV-7(g), Defendants respectfully request an oral hearing on this motion.

## I.     STATEMENT OF ISSUES[1]

Whether, for the convenience of the parties and witnesses, and in the interest of justice, this matter should be transferred to the District of New Jersey.

## II.    INTRODUCTION

This patent litigation should be transferred to the District of New Jersey.  There is no connection between this case and the Eastern District of Texas – no parties, no identified witnesses, and no known research and development relating to the patents in suit or alleged infringement.  TiVo Inc. ("TiVo") tries to tie the litigation to this District by alleging that the accused services and products (Defendants' video services and the digital video recording devices and software used in providing those services) are "provide[d] . . . to customers" in this District.  Am. Compl. ¶ 11 [DN 18].  But the law is clear:  the presence of customers of an allegedly infringing product is not a sufficient basis for denying a party's motion to transfer to a more convenient forum.  *See In re Nintendo, Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

By contrast, Defendants each have a presence in the District of New Jersey, and many witnesses and the great majority of the relevant documents are located there.  Perhaps more

---

[1] A motion to transfer is considered a dispositive motion in this District.  *See* Local Rule CV-7(a)(1).

important, a critical non-party and several critical non-party witnesses reside nearby.  Motorola

Inc. ("Motorola"), which designed, developed, tested, and manufactured the accused digital

video recording devices and software – and ultimately sold (and continues to sell) those products

to Verizon – is located in Horsham, Pennsylvania, a short distance from New Jersey.  At least

seven key non-party witnesses and nearly all of Motorola's critical physical and documentary

evidence are located there – and would fall within the New Jersey court's (but not this Court's)

subpoena power.  Based on these facts alone, the Court should grant the motion to transfer, as it

recently did under similar circumstances in *SMDK Corp. v. Creative Labs, Inc.*, No. 2:08-CV-26,

2009 WL 5246368, at *1 (E.D. Tex. Dec. 11, 2009) (transferring patent infringement suit where

"[t]here appears to be no connection between this case and the Eastern District of Texas" – no

parties, no identified witnesses, no known research and development relating to the patents in

suit or alleged infringement – whereas several defendants had a presence in the transferee

district, several purportedly prior art products were developed there, and several identified non-

party witnesses resided there) (internal quotation marks omitted).

   But there are two additional circumstances favoring transfer here that were not present in

*SMDK*.  First, the District of New Jersey would have personal jurisdiction over all three

defendants named in the Amended Complaint, whereas we respectfully submit that this Court

lacks personal jurisdiction over one defendant, VCI.  New Jersey thus is not only a proper forum,

but a better forum for this case, because it would allow TiVo to proceed against all named

defendants.

   Second, TiVo has litigation against AT&T pending in this Court, involving three of the

same patents at issue here.  TiVo's counsel in the AT&T litigation is prohibited under the Rules

of Professional Conduct and the law of this District from taking a position on behalf of one client

2

(TiVo) that "could, as a practical matter, prejudice" the interests of another client (Verizon) in a case pending in the same court. *Rembrandt Techs., L.P. v. Comcast Corp.*, No. 2:05CV443, 2007 WL 470631, at *4-*5 (E.D. Tex. Feb. 8, 2007). This fact strongly supports Verizon's motion to transfer, so that TiVo's counsel in the AT&T litigation is not advocating claim constructions of the three patents at issue that will directly and adversely affect Verizon.

There would be little (if any) benefit to having the two cases in the same court, in any event. Defendants have asserted five patents in their counterclaims against TiVo that are not at issue in the AT&T litigation. There are no economies between those counterclaims and any issues in the AT&T litigation. Further, even with respect to the three TiVo patents, the allegedly infringing AT&T and Verizon products and services at issue are different in critical respects. *None* of the allegedly infringing hardware and software for the accused AT&T and Verizon devices is the same. Thus, despite the necessary overlap in claim constructions (that creates the conflict issue noted above), the discovery directed at AT&T and Verizon will be significantly different; there are, therefore, no economies in keeping the two cases together. Transfer of this case is the only sensible result.

For these and other reasons discussed below, this litigation would proceed more conveniently and the interests of justice would be better served by transfer to the District of New Jersey.

### III.    FACTS

A.    Plaintiff TiVo is a Delaware corporation with its principal place of business in Alviso, California.  *See* Am. Compl. ¶ 1.  TiVo provides digital video recorders and subscription-based services to approximately 3.3 million subscribers nationwide.  *See id.* ¶ 15.

Defendant VCI is a holding company that holds stock in its direct and indirect subsidiaries, and also holds title to certain patents, either solely or jointly with one or more of its subsidiaries.  *See* Declaration of Jane A. Schapker in Support of Defs.' Motion To Transfer ("Schapker Decl.") ¶ 3, attached as Exhibit 1.  VCI does not sell, market, or provide the video services at issue in this case (or commercial services of any kind), and it does not make, use, or offer to sell any product.  *See id.*  VCI is separate and distinct from other Verizon entities (including Services Corp., Corporate Resources Group, and Verizon's operating subsidiaries) and observes all corporate formalities.  *See id.* ¶ 4.

VCI does not conduct business in Texas, and is neither licensed nor qualified to do so.  *See id.* ¶ 5.  VCI does not have a registered agent for service of process in Texas, does not have any offices in Texas, does not own any real property in Texas, does not have any employees in Texas, does not advertise or solicit business in Texas, and does not file tax returns in that state.  *See id.*

VCI is registered to do business in New Jersey; it has a registered agent for service of process there; and all five of VCI's employees and 27 of its 30 officers have offices in New Jersey.  *See id.* ¶¶ 6, 10.  VCI "maintains a permanent and continuous place of business" in Basking Ridge, New Jersey, which is a "location and seat of management or control of the corporation."  *Id.* ¶ 8.  VCI also files income, unemployment, and payroll tax returns in New Jersey.  *Id.* ¶ 7.

4

Defendant Services Corp. is a "services affiliate," a company established pursuant to Federal Communications Commission regulations, and authorized to provide services – such as administrative, engineering, and management services, but not telecommunications services – to members of its corporate family, and not directly to customers.  *Id.* ¶ 12.  Services Corp. provides its services to Verizon New Jersey Inc. and to other of the Verizon operating companies.  *See id.*  Services Corp. is licensed to and does conduct business in New Jersey, and Services Corp. files income, unemployment, payroll, and transaction tax returns in the state.  *See id.*  Currently, Services Corp. has about 1,250 employees in New Jersey, many of whom work on video services in Basking Ridge.  *See id.* ¶ 13.  Those employees are located in 51 different offices throughout New Jersey, but they are largely concentrated in Basking Ridge, the location of operations for Verizon's major business units and subsidiaries.  *See id.*  The 135-acre Basking Ridge campus is the workplace of approximately 3,000 employees within the Verizon corporate family – the highest concentration of Verizon employees anywhere in the country – and is home to Services Corp.'s leadership team.  *See id.* ¶ 16.  All of Services Corp.'s directors, and 15 of its 19 officers have offices in Basking Ridge.  *See id.* ¶ 13.

Basking Ridge is the principal place of business of defendant Corporate Resources Group.  *See id.* ¶ 14.  Corporate Resources Group is a payroll company that employs certain personnel in the fields of technology, strategy and planning, human resources, and legal and external affairs.  *See id.* ¶ 15.  Like VCI and Services Corp., Corporate Resources Group is incorporated under the laws of Delaware.  *See id.* ¶ 14.

**B.**      In its Amended Complaint, TiVo alleges that Defendants have infringed United States Patent Nos. 6,233,389 ("the '389 patent"), 7,529,465, and 7,493,015 by "making, using,

5

offering to sell, or selling" digital video recording devices, digital video recording device software, and personal television services.  Am. Compl. ¶¶ 22-45.

TiVo has pleaded the barest allegations without particular claims of infringement.  But based on those cursory allegations and after a reasonable investigation, Defendants believe *there are no potential witnesses or relevant documents located in the Eastern District of Texas*.  *See* Declaration of Shawn M. Strickland in Support of Defs.' Motion To Transfer ("Strickland Decl.") ¶¶ 23-24, attached as Exhibit 2.

Certain entities within Verizon's corporate family – other than Defendants – offer video services, including FiOS TV services, to mass-market customers.  Some Verizon video offerings include a digital video recording ("DVR") device and DVR software that allow customers to access video programming and various interactive services.  *See id.* ¶ 7.

The accused DVR functionality, which is incorporated into certain "set-top boxes," was not designed, developed, tested, or manufactured in this District.  Nor are the DVR set-top boxes manufactured by Verizon.  Services Corp. holds the contract for the purchase of the set-top boxes from a third party, Motorola.  To date, Motorola has been the sole supplier of Verizon's commercially deployed FiOS set-top boxes, including those with DVR functionality, since the inception of Verizon's FiOS TV services.  *See id.* ¶¶ 8-9.

Nearly all Motorola personnel who were and are involved in developing, designing, manufacturing, supporting, managing, and marketing Motorola's set-top boxes – including their sale to Verizon – are located in Horsham, Pennsylvania.  *See* Declaration of Evan Groat of Motorola in Support of Defs.' Motion To Transfer ("Motorola (Groat) Decl.") ¶ 4, attached as Exhibit 3.  Motorola has identified seven individuals, in particular, who have knowledge and potential testimony bearing on TiVo's claims:

| Table A:  Motorola Witnesses | | |
|---|---|---|
| *Potential Motorola Witness* | *Subject Area(s) of Knowledge* | *Potential Relevance of Testimony* |
| Larry Robinson, Vice President, Product Management – Digital Set Top Boxes | Overall product management responsibility for digital set-top boxes, including those purchased by Verizon | Non-infringement and damages |
| Evan Groat, Director, Product Management Hybrid Set-tops | Marketing and development process of set-top boxes sold to Verizon | Non-infringement |
| Bill Blum, Senior Director, Systems Engineering | Engineering and design of digital video products, including set-top boxes sold to Verizon and other service providers | Non-infringement, prior art, and damages |
| John Kamieniecki, Systems Engineering Manager | Engineering and design of set-top boxes sold to Verizon | Non-infringement and prior art |
| Jim Cutrufello, Senior Director of Sales | Sales of set-top boxes to Verizon | Damages |
| John Tracy, Vice President of Finance | Financial matters relating to Motorola's Video Services Division | Non-infringement and damages |
| Thomas Chester, Director of Finance | Financial matters related to Verizon's purchase of the set-top boxes | Non-infringement and damages |

*See id.* ¶¶ 8-12; Declaration of Bill Blum of Motorola in Support of Defs.' Motion To Transfer ("Motorola (Blum) Decl.") ¶ 1, attached as Exhibit 4.  All of these Motorola witnesses are located in Horsham, Pennsylvania, and all are in Motorola's Digital Video Solutions Division. *See* Motorola (Groat) Decl. ¶ 7.  Horsham, Pennsylvania is about 21 miles from Trenton, New Jersey, and 64 miles from Newark, as the crow flies (28 miles and 82 miles by car, respectively). *See* Declaration of Evan T. Leo in Support of Defs.' Motion To Transfer ("Leo Decl.") ¶¶ 3-6 and Attachs. A-D, attached as Exhibit 5.

The Verizon personnel who control the development, design, operation, management, pricing, and marketing of the accused video services do not reside in the Eastern District of

Texas.  Instead, as explained in more detail in the Strickland Declaration (¶¶ 15-22), the potential key Verizon fact witnesses work in or very near Basking Ridge:

| Table B:  Verizon Witnesses | | | |
|---|---|---|---|
| *Potential Verizon Witness* | *Location* | *Subject Area(s) of Knowledge* | *Potential Relevance of Testimony* |
| Keiko Harvey, Senior Vice President, Services Corp. | Basking Ridge, NJ | Design, deployment, network and systems planning, operations processes, and product development for FiOS TV. | Non-infringement and damages |
| Mark Wegleitner, Senior Vice President, Corporate Technology, Corporate Resources Group | Basking Ridge, NJ | Strategic technical development and network planning for FTTP network and video network architectures. Other video technologies, including early set-top box technology and services. | Non-infringement, Defendants' invalidity defenses, and damages |
| Shadman Zafar, Senior Vice President, Product Design and Development, Verizon Data Services LLC | Basking Ridge, NJ | Software development, design, deployment and testing for FiOS TV.  Features and functionality provided by the set-top boxes. | Non-infringement |
| Brian Whitton, Executive Director of Technology, Corporate Technology, Corporate Resources Group | Pearl River, NY | Strategic technical development and network design for the FTTP network and video network architectures.  Selection of technology and vendor selection for the set-top boxes for FiOS TV. General development and availability of digital video recording devices and software in the industry. | Non-infringement, Defendants' invalidity defenses, and damages |
| Shawn Strickland, Vice President, Consumer Planning & Strategy, Services Corp. | Basking Ridge, NJ | Defining and development of features for FiOS TV services, including customer preferences for video services, and pricing, packaging, and positioning of FiOS TV.  Budget for set-top boxes, including forecasting demand and ordering DVR devices. | Damages |

| Table B:  Verizon Witnesses | | | |
|---|---|---|---|
| *Potential Verizon Witness* | *Location* | *Subject Area(s) of Knowledge* | *Potential Relevance of Testimony* |
| Joseph Ambeault, Director, Product Management & Product Development, Corporate Resources Group | Basking Ridge, NJ & New York, NY | Requirements for video services, including features and functionality of the set-top boxes.  Investments in the set-top boxes used with FiOS TV services.  General development and availability of video systems that employed set-top boxes in the industry over time. | Defendants' invalidity defenses and damages |
| Eric Bruno, Vice President – Product Management, Corporate Resources Group | Basking Ridge, NJ | Development of FiOS TV and investments relating to Motorola's set-top boxes used with FiOS TV services. | Damages |
| Jacky Wu, Director, Financial Planning & Analysis, Services Corp. | Basking Ridge, NJ | Financial planning, reporting, and analysis for FiOS TV. | Damages |

Defendants believe that most of the documents and other evidence relevant to the claims and defenses in this case will be found in Verizon's offices in Basking Ridge, New Jersey, and in non-party Motorola's offices in Horsham, Pennsylvania.  *See* Strickland Decl. ¶ 24; Motorola (Groat) Decl. ¶ 5.

## IV.    ARGUMENT

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Section 1404(a) is intended "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. Barge FBL-585*, 365 U.S. 19, 26, 27 (1960)).

The transfer analysis has two parts.  "The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*") (quoting 28 U.S.C. § 1404(a)).[2] Once that is established, the district court must determine, in its discretion, whether transferring the case serves the convenience of parties and witnesses and is in the interest of justice.  *See id.* at 315.  In making that determination, courts in this Circuit consider the private and public interest factors traditionally applied in *forum non conveniens* cases.  *See id.*  "The private interest factors are:  '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive.'"  *Id.* (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*")); *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (applying Fifth Circuit law).  "The public interest factors are '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws [or in] the application of foreign law.'"  *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I*, 371 F.3d at 203).  Although the private and public interest factors usually guide the court's decision on transfer motions, those factors are not necessarily "exhaustive or exclusive."  *Id.*

Significantly, the plaintiff's choice of venue is "*not* a factor" in a § 1404(a) transfer analysis.  *ATEN Int'l Co. v. Amine Tech. Co.*, 261 F.R.D. 112, 123 (E.D. Tex. 2009) (emphasis added); *see Volkswagen II*, 545 F.3d at 314 & n.10; *Nintendo*, 589 F.3d at 1200 ("the Fifth

---

[2] Fifth Circuit law governs this motion to transfer which is procedural in nature.  *See Storage Tech. Corp. v. Cisco Sys. Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003).

Circuit forbids treating the plaintiff's choice of venue as a factor in the analysis of a request to transfer for the convenience of the parties"). Instead, the defendant's burden of proof incorporates the proper deference to the plaintiff's chosen forum. The movant must show "that the transferee venue is clearly more convenient" than the plaintiff's choice of venue. 545 F.3d at 315. But when the movant meets that standard, "it has shown good cause and the district court should therefore grant the transfer." *Id*. Further, a "plaintiff's forum choice is given less weight when," as here, "the plaintiff brings suit outside of its home district." *See Frederick v. Advanced Fin. Solutions, Inc.*, 558 F. Supp. 2d 699, 703 (E.D. Tex. 2007).

Where, as here, the defendants' "operations are centered" in the transferee district, "[a] substantial number of party and non-party witnesses reside [there] and a substantial amount of the sources of proof are also located there, while very few witnesses and sources of proof, if any, reside in this District," the motion to transfer should be granted. *Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F. Supp. 2d 546, 551-52 (E.D. Tex. 2009) (plaintiff "failed to show a sufficient connection to this district to override the conveniences gained by transferring case" for certain defendants); *see also Nintendo*, 589 F.3d at 1198 (applying Fifth Circuit law) (district court should have granted defendant's motion to transfer "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff"); *In re Genentech*, 566 F.3d 1338, 1341-42 (Fed. Cir. 2009).

### A.    This Action "Might Have Been Brought" in the District of New Jersey

"The first issue that a district court must address in ruling on a motion to transfer under § 1404(a) is the question of whether the judicial district to which transfer is sought qualifies under the applicable venue statutes as a judicial district where the civil action 'might have been brought.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003). Defendants must show "both personal jurisdiction and venue in the transferor court." *Chirife v. St. Jude Med., Inc.*, No.

11

6:08 CV 480, 2009 WL 1684563, at *1 (E.D. Tex. June 16, 2009). Here, the District of New Jersey is a proper forum.

1.    A federal court in the District of New Jersey would have personal jurisdiction over all three defendants. This Court, by contrast, lacks personal jurisdiction over at least one defendant – VCI (as raised in its Answer pursuant to Federal Rule of Civil Procedure 12(b)). The District of New Jersey is not only a proper forum, but a better forum for this case, because it would allow TiVo to proceed against all defendants named in its Amended Complaint.[3]

Federal Circuit law governs the exercise of personal jurisdiction in a patent infringement case. *See 3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377-78 (Fed. Cir. 1998). "Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits the assertion of jurisdiction and whether assertion of personal jurisdiction violates federal due process." *Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1385 (Fed. Cir. 1998). Both the New Jersey long-arm statute and Texas long-arm statute permit the exercise of personal jurisdiction to the fullest limits of due process. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (applying New Jersey law); *Revell v. Lidov*, 317 F.3d 467, 469-70 (5th Cir. 2002) (applying Texas law). Under the constitutional analysis, due process will not be offended if the non-resident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v.*

---

[3] This Court's lack of personal jurisdiction over defendant VCI does not prevent the Court from transferring the case, under either 28 U.S.C. § 1404(a) or § 1406(a), to a district in which personal jurisdiction can be obtained. *See Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1107 (5th Cir. 1981).

*Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1941)).[4]

The minimum contacts test can be established in one of two ways:  general jurisdiction or specific jurisdiction.  General jurisdiction exists when the non-resident's contacts with the forum state are "continuous and systematic," even if the cause of action has no relation to those contacts.  *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

Specific jurisdiction exists when the plaintiff satisfies a three-prong test by showing:  (1) the defendant purposefully directed its activities at the forum state; (2) the plaintiff's claim arises out of those activities; and (3) assertion of personal jurisdiction over the defendant is "reasonable and fair."  *Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995).

At this stage in the absence of jurisdictional discovery, Defendants bear the burden of presenting a *prima facie* case for personal jurisdiction in the District of New Jersey, but TiVo bears the burden of establishing personal jurisdiction if the case remains in this District.  *See Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir. 2002); *Balthasar Online*, 654 F. Supp. 2d at 551.

### a.    VCI Is Subject to Personal Jurisdiction in New Jersey

The District of New Jersey has personal jurisdiction over VCI.  The Eastern District of Texas does not.

As discussed above and explained in greater detail in the attached declaration of Jane Schapker, the Assistant Corporate Secretary of VCI, VCI "maintains a permanent and continuous

---

[4] Due process requires that the non-resident defendant have "minimum contacts" with the forum that results from an affirmative act on its part, such that the non-resident could anticipate being subject to suit in the courts of the forum state.  *See, e.g.*, *Burger King v. Rudzewicz*, 471 U.S. 462, 474-77 (1985).  Even if such minimum contacts can be established, personal jurisdiction can be exercised over a non-resident defendant only if it would be fair and reasonable to require the non-resident to defend a suit in the forum.  *See, e.g.*, *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999).

place of business" in New Jersey, and Basking Ridge, New Jersey, is a "location and seat of

management or control of the corporation."  Schapker Decl. ¶ 8.  In addition,

  o   VCI has a registered agent for service of process in New Jersey;

  o   VCI is registered to do business in New Jersey;

  o   VCI files income, unemployment, and payroll tax returns in New Jersey;

  o   All of VCI's five employees have an office in New Jersey; and,

  o   Twenty-seven of its 30 officers have an office in New Jersey.

*See id.* ¶¶ 6-7, 9-10.  These facts are sufficient for the District of New Jersey to exercise personal

jurisdiction over VCI.  *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-16

(1984).

    In contrast, VCI has no contacts with Texas – much less the "continuous and systematic"

contacts required for general jurisdiction.  *Id.*  VCI does not conduct business in Texas, and it is

neither licensed nor qualified to do so.  *See* Schapker Decl. ¶ 5.  VCI does not have a registered

agent for service of process in Texas, does not have any offices in Texas, does not own any real

property in Texas, does not have any employees in Texas, and does not advertise or solicit

business in Texas.  *See id.*  In addition, TiVo cannot show that VCI purposefully directed its

activities towards Texas residents, as would be required to establish specific jurisdiction, because

VCI does not make, sell, or offer to sell anything in Texas (or in any jurisdiction), nor conduct

any business in this jurisdiction.  *See Akro Corp.*, 45 F.3d at 1545.[5]

---

[5] Nor has TiVo *alleged* any connection between VCI and Texas or the infringing activity, beyond
possibly its affiliation with the other defendants.  *See*, *e.g.*, Am. Compl. ¶ 26.  But it is well
established that the activities of a holding company's subsidiaries cannot form the basis for
personal jurisdiction over the holding company, unless "specific, unusual circumstances call for
an exception."  *Aarotech*, 160 F.3d at 1380 (finding no personal jurisdiction over parent of a
subsidiary that was subject to personal jurisdiction where parent directed no activities toward
residents in the forum state).  TiVo has not alleged and cannot show that such exceptional

For these reasons, other courts that have considered this issue have held that personal jurisdiction is lacking over VCI in Texas. For example, the Northern District of Texas held in a patent infringement action that VCI's "contacts with Texas are lacking in quantity and quality to justify personal jurisdiction, and there is no evidence that [VCI's] relationship with its subsidiaries would justify a finding of specific or general jurisdiction in Texas." *Phonetel Communications, Inc. v. U.S. Robotics Corp.*, No. 4:00-CV-1750, 2001 WL 36082631, at *5 (N.D. Tex. June 1, 2001).[6]

Since in this case personal jurisdiction over VCI is proper in New Jersey, but lacking in Texas, transferring the case to New Jersey would create a proper forum for TiVo to proceed against each defendant it has named in its Amended Complaint.

---

circumstances exist in this case. *See also Kelley v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 856 (5th Cir. 2000) ("[S]o long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributable to the other."); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 218 (5th Cir. 2000) ("A [non-resident] parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the [non-resident] parent."); *Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1468 (Fed. Cir. 1998) (upholding dismissal for lack of personal jurisdiction where defendant was a holding company that had no presence or activity in forum state); *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 773-74 (5th Cir. 1988) ("it is well-settled that where . . . a wholly owned subsidiary is operated as a distinct corporation, its contacts with the forum cannot be imputed to the parent").

[6] In at least four actions in the Eastern District of Texas, plaintiffs chose to dismiss VCI as a defendant after VCI formally objected to the exercise of personal jurisdiction. *See Yellowstone Invs. v. Verizon Communications Inc.*, No. 2:06-CV-475-TJW-CE (VCI dismissed by plaintiff after VCI filed a motion to dismiss for lack of personal jurisdiction); *TGIP, Inc. v. AT&T Corp.*, No. 2:06-CV-105-LED (same); *MyMail, Ltd. v. America Online, Inc.*, No. 6:04-CV-189-LED (same); *Centre One v. Vonage Holdings Corp.*, No. 6:08-CV-467-LED (same). Likewise, in at least three other recent actions, plaintiffs dismissed VCI as a defendant after VCI informally objected to the exercise of personal jurisdiction. *See Voxpath Networks Inc. v. Verizon Communications Inc.*, No. 4:08-CV-00127-RAS (VCI removed from complaint); *Red River Fiber Optic Corp. v. Verizon Communications Inc.*, No. 2:08-CV-00215-TJW-CE (same); *C2 Communications Tech. Inc. v. Global Crossing Telecomms. Inc.*, No. 2:06-CV-00241 (same).

   **b.    Verizon Services Corp. Is Subject to Personal Jurisdiction in
          New Jersey**

The District of New Jersey also would have jurisdiction over defendant Services Corp.

As noted above and explained in the attached declarations:

> o   Services Corp. is licensed, is registered, and regularly conducts business in New
>     Jersey;
>
> o   Services Corp. files income, unemployment, payroll, and transaction tax returns in
>     New Jersey;
>
> o   Approximately 1,250 of Services Corp.'s employees are located in New Jersey, in
>     51 different offices throughout New Jersey, many in Basking Ridge;
>
> o   All of Services Corp.'s directors have offices in New Jersey;
>
> o   Fifteen of 19 of Services Corp.'s officers are located there; and
>
> o   Services Corp. holds the contract for the purchase of the accused set-top boxes
>     from Motorola.

*See* Schapker Decl. ¶¶ 12-13; Strickland Decl. ¶ 8.  Services Corp.'s contacts are sufficient to

establish personal jurisdiction in New Jersey.

   **c.    Verizon Corporate Resources Group LLC Is Subject to Personal
          Jurisdiction in New Jersey**

Corporate Resources Group's principal place of business is Basking Ridge, New Jersey.

There is no question that it is subject to personal jurisdiction in that state.

   **2.**    Venue also would be proper in the District of New Jersey.  In a patent

infringement suit, venue is proper in any "judicial district where the defendant resides, or where

the defendant has committed acts of infringement and has a regular and established place of

business."  28 U.S.C. § 1400(b).  For purposes of venue, a corporation resides in any judicial

district in which it is subject to personal jurisdiction.  *See id.* § 1391(c).  Because each of the

three defendant corporations is subject to personal jurisdiction in the State of New Jersey, each

"resides" there for purposes of the patent venue statute. Accordingly, this action "might have been brought" in the District of New Jersey. *Id.* § 1404(a).

**B.    Each of the Private Interest Factors Strongly Favors Transfer to the District of New Jersey**

Transfer to the District of New Jersey would clearly be more convenient for the parties and for the witnesses (Point 1, *infra*); would insure that critical non-party witnesses are within the subpoena power of the district court (Point 2, *infra*); would bring the action nearer to the sources of proof (Point 3, *infra*); and would not create any practical problems, but may avoid serious ethical problems arising from TiVo's counsel in the AT&T litigation taking a position on behalf of one client (TiVo) that could, as a practical matter, prejudice the interests of another existing client (Verizon) in this case (Point 4, *infra*).

**1.    The Convenience of the Parties and Witnesses Strongly Favors Transfer**

The "convenience of parties and witnesses" is an important – perhaps the single most important – factor in the transfer analysis. *Genentech*, 566 F.3d at 1343. It is the first of two factors mentioned in § 1404(a), "*[f]or the convenience of parties and witnesses*, in the interest of justice, a district court may transfer. . . ." 28 U.S.C. § 1404(a) (emphasis added). The Federal Circuit has held time and again that, "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *Nintendo*, 589 F.3d at 1198.

No party to this case resides in Texas. All three defendants, as explained above, operate and manage a substantial portion of their business from Basking Ridge, New Jersey. *See* Schapker Decl. ¶¶ 8, 13, 14. Most of the decisions regarding planning, development, design, marketing, and sales of the accused services were made in New Jersey, and the accused services are operated and managed from that location today. *See* Strickland Decl. ¶ 13. As such, New

17

Jersey is the "'center of accused activity'" and generally "the preferred forum in a patent

infringement action." *Cummins-Allison Corp. v. Glory Ltd.*, No. 2:03-CV-358TJ, 2004 WL

1635534, at *6 (E.D. Tex. May 26, 2004) (quoting *Beam Laser Sys., Inc. v. Cox

Communications, Inc.*, 117 F. Supp. 2d 515, 518-19 (E.D. Va. 2000)); *see also Minka Lighting,

Inc. v. Trans Globe Imports, Inc.*, No. 3:02-CV-2538, 2003 WL 21251684, at *3 (N.D. Tex. May

23, 2003) ("[i]n a patent infringement action, the preferred forum is . . . the center of gravity of

accused activity"; thus the "location of the alleged infringer's principal place of business . . . is

often the critical and controlling consideration in adjudicating a motion to transfer venue");

*Cellularvision Tech. & Telecomms., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1193 (S.D. Fla.

2007) (when the plaintiff has not brought a patent suit in their home forum, the most convenient

venue under § 1404(a) is "the defendant's home jurisdiction in which the majority of

development, testing, research, production, and decisions regarding marketing and sales took

place"); 15 Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 3849 (3d ed. 1986)

("Transfer to a corporate defendant's place of business is particularly likely in patent or

copyright infringement cases.").

Transfer to New Jersey also would be more convenient to potential witnesses, including

non-party witnesses.  The Court must compare the relative distance a witness would have to

travel if the case remained in the original forum versus if it were transferred.  *See Volkswagen I*,

371 F.3d at 204-05.  "Additional distance [from home] means additional travel time; additional

travel time increases the probability for meal and lodging expenses; and additional travel time

with overnight stays increases the time which these fact witnesses must be away from their

regular employment." *Id*. at 205.  "Witnesses not only suffer monetary costs, but also the

personal costs associated with being away from work, family, and community." *Volkswagen II*, 545 F.3d at 317.

The Fifth Circuit has adopted a "100-mile rule" to assist with this analysis. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05. However, the "100-mile rule" is not rigidly applied. "When a particular witness will be required to travel 'a significant distance no matter where they testify,' then that witness is discounted for purposes of the '100 mile rule' analysis." *ATEN Int'l*, 261 F.R.D. at 125 (quoting *Genentech*, 566 F.3d at 1344-46).

After a diligent inquiry, Verizon has not identified a single material witness who works or resides within the Eastern District of Texas. By contrast, at least fifteen potential witnesses live or work in the District of New Jersey or very nearby. As identified above, seven of eight potential key Verizon witnesses work in New Jersey, and the eighth works in Pearl River, New York, which borders the New Jersey state line. *See supra* Table B: Verizon Witnesses.

Of the fifteen potential witnesses, seven are critical, non-party witnesses who are located within the subpoena power of the District Court in New Jersey. As noted earlier, Motorola manufacturers the accused devices and developed the related software. The Motorola personnel with knowledge of those devices and software – including the products' design, development, manufacture, support, marketing, and sale – are located in Horsham, Pennsylvania. Defendants anticipate that the seven Motorola employees, identified above, will be important fact witnesses in their defense against TiVo's patent claims.

19

To be sure, potential witnesses with knowledge bearing on TiVo's claims and Verizon's counterclaims may also be located in Northern California, the location of TiVo's headquarters.[7] But those witnesses will have to travel a significant distance whether or not this case is transferred. *See ATEN Int'l*, 261 F.R.D. at 125 ("When a particular witness will be required to travel a significant distance no matter where they testify, then that witness is discounted for purposes of the 100 mile rule analysis.") (internal quotation marks omitted); *Genentech*, 566 F.3d at 1344-46 (discounting European witnesses and documents transported from Washington, D.C. in the convenience analysis when reviewing a denial of transfer from Texas to California). Furthermore, there is no reason to believe that those witnesses would be inconvenienced by a transfer to New Jersey; in fact, it would be faster to travel commercially from Northern California to Newark, New Jersey, than to Marshall, Texas.[8]  In all events, because there are no known witnesses in this District, Texas's geographic midpoint between California and New Jersey may not be used as a consideration in this Court's convenience analysis. *See Genentech*, 566 F.3d at 1344 ("the district court improperly used its central location as a consideration in the

---

[7] Defendants filed permissive counterclaims along with their Answer on February 24, 2010. Although the Court may consider those counterclaims in its motion to transfer analysis, *see Volkswagen I*, 371 F.3d at 204, those counterclaims should not alter the Court's analysis. They provide no greater connection to the Eastern District of Texas than the claims asserted by TiVo. None of the parties or known witnesses resides in the District, and to Defendants' knowledge, none of the inventors or prosecuting attorneys of the seven counterclaim patents resides or works in this District.

[8] Currently, there are direct, non-stop flights from San Francisco, California, to Newark, New Jersey with a total flight time of 5 hours, 15 minutes.  Travel from San Francisco to Marshall, Texas, would require a flight to Dallas/Ft. Worth International Airport, with total flight time of 4 hours, 55 minutes, plus approximately 174 miles of driving from the airport to Marshall, with an estimated driving time of 2 hours, 48 minutes.  *See* Leo Decl. ¶¶ 7, 9, 10.  Alternatively, one could fly into Shreveport, Louisiana and drive the 38 miles from the airport to Marshall, which takes approximately 43 minutes.  Unfortunately, there are no direct flights from San Francisco to Shreveport.  At the very best, a traveler may be able to make the flight in 5 hours for a total travel time of 5 hours and 40 minutes.  But, more likely, the trip would take much longer.  *See id.* ¶¶ 8, 10.  Therefore transfer to Newark would likely save each San Francisco traveler significant travel time.

absence of witnesses within the plaintiff's choice of venue"); *Nintendo*, 589 F.3d at 1199 ("it is improper to consider the centralized location of the Eastern District of Texas when no identified witness resides in the district") (citing *Genentech*, 566 F.3d at 1344); *see SMDK*, 2009 WL 5246368, at *1 (granting motion to transfer patent infringement suit to the Northern District of California even though that forum "may potentially be less convenient for [certain] defendants located closer to the Eastern District of Texas, to wit, the New York, Arkansas, and Indiana defendants," and the plaintiff was located in Florida).

Where, as here, "a substantial number of material witnesses reside within [or very near] the transferee venue . . . , and no witnesses reside within the Eastern District of Texas," this factor "weigh[s] substantially in favor of transfer." *Genentech*, 566 F.3d at 1345. *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1335-36 (Fed. Cir. 2009) (proper focus is the number of witnesses who reside in or near the transferee district, especially when compared to the relatively few witnesses residing in the transferor district); *Nintendo*, 589 F.3d at 1199 ("cost of attendance for willing witnesses clearly favors transfer" to Washington where "[a]ll of the identified key witnesses in th[e] case are in Washington, Japan, Ohio, and New York" and "[n]o witnesses live in Texas"); *Odom v. Microsoft*, 596 F. Supp. 2d 995, 1002 (E.D. Tex. 2009) (despite the fact that the plaintiff identified witnesses outside the transferee forum, including at least one witness in Texas, the Court weighed this factor in favor of transfer because a substantial number of witnesses were located in or near the transferee forum).

## 2. *The Availability of Compulsory Process To Secure the Attendance of Witnesses Favors Transfer*

The District of New Jersey is not merely more convenient to many key non-party witnesses. The New Jersey court has the ability to secure their attendance at depositions and at trial through compulsory process – an ability that this Court lacks. Courts considering a transfer

motion recognize that where, as here, "a substantial number" of potentially relevant third-party witnesses reside in or near the transferee venue, the availability of compulsory process over those witnesses tips in favor of transfer. *ATEN Int'l*, 261 F.R.D. at 124.

As discussed, Motorola researched, developed, designed, marketed, and sold the accused product from its facility in Horsham, Pennsylvania, which is about a 27-mile drive from Trenton and about an 82-mile drive from Newark – well within the court's 100-mile subpoena power. *See* Motorola (Groat) Decl. ¶ 4; Leo Decl. ¶¶ 4, 6. The vast majority of Motorola personnel who are involved in the accused products are located in Horsham, including seven key witnesses identified by Motorola. *See* Motorola (Groat) Decl. ¶¶ 4, 7.

By contrast, there are no known non-party witnesses who reside within the Eastern District of Texas. Where there are witnesses that are subject to the transferee forum's subpoena power, but no witnesses similarly subject to the transferor forum's subpoena power, "[t]he fact that the transferee venue is a venue with usable subpoena power [] weighs in favor of transfer, and not only slightly." *Genentech*, 566 F.3d at 1345; *see MedioStream, Inc. v. Microsoft Corp.*, No. 2:08CV3690, 2009 WL 3161380, at *4 (E.D. Tex. Sept. 30, 2009) (compulsory process factor "will generally tip in favor of a transfer when more non-party witnesses reside within the proposed venue than in the plaintiff's chosen venue").

### 3.    *The Relative Ease of Access to Sources of Proof Favors Transfer*

The Federal Circuit has held that, "'[i]n patent infringement cases, the bulk of relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.'" *Nintendo*, 589 F.3d at 1199 (quoting *Genentech*, 566 F.3d at 1345). Just as in the *Nintendo* case, there is no known "relevant documentation or other evidence in the Eastern District of Texas." *Id.*; *see* Strickland Decl. ¶ 24. The vast majority of the relevant documents are located at Verizon's main

campus in Basking Ridge, New Jersey.  *See* Strickland Decl. ¶ 24.  Other critical evidence will

be found at Motorola's facility in Horsham, Pennsylvania.  *See* Motorola (Groat) Decl. ¶ 5.  The

Motorola evidence will likely include examples of the accused DVR devices, as well as

documents.  Because "the weight of physical and documentary evidence is located" in or very

near the proposed transferee forum, "this factor favors transfer."  *ATEN Int'l*, 261 F.R.D. at 124.

### 4.     *No Practical Problems Exist with Transferring this Case*

There are no practical problems with transferring this case to the District of New Jersey,

which further weighs in favor of transfer.  There has been no discovery in this case to date, and

this is the first motion filed.  Moreover, transferring this case out of this District may eliminate a

serious ethical conflict that otherwise might require disqualification of TiVo's counsel in its

separate litigation against AT&T now pending in this Court.

Verizon is an existing client of Irell & Manella, LLP, the law firm representing TiVo in

the AT&T case.  Allowing the two cases to proceed in the same Court would inevitably bring

TiVo's counsel in the AT&T litigation into consultations, decisions, and actions that are directly

adverse to Verizon.     In *Rembrandt Technologies, L.P. v. Comcast Corp.*, No. 2:05CV443, 2007

WL 470631, at *4-*5 (E.D. Tex. Feb. 8, 2007), the Court disqualified plaintiff's law firm Fish &

Richardson because plaintiff had separately sued (using different counsel) a current client of Fish

& Richardson in the same court.  Because plaintiff had brought essentially identical cases "in the

same district" that were "pending before the same judge at roughly the same time," there was a

"likelihood that the position taken by [Fish & Richardson] in [one] case could, as a practical

matter, prejudice" the law firm's other client in the other case.  So, even though the cases were

never consolidated, and there were separate counsel, the Court disqualified Fish & Richardson

because its representation of plaintiff in one case was found to be "directly adverse" to that law

firm's client in the separate case.  Under the principle articulated in *Rembrandt*, counsel for TiVo

in the AT&T litigation would have a concurrent conflict of interest in representing TiVo in the same court that is presiding over TiVo's case against Verizon. *See* Model Rules of Prof. Conduct 1.7(a)(1); *Rembrandt*, 2007 WL 470631, at *2-*3 (applying the Model Rules to disqualification motion).

There would be little, if any, benefit to keeping the two cases together in any event. Verizon has asserted five patents in infringement counterclaims against TiVo that are not at issue in the AT&T litigation. There are no economies between those counterclaims and any issues in the AT&T litigation. Moreover, even with respect to the three TiVo patents, the allegedly infringing AT&T and Verizon services at issue are distinct, and there will be little or no overlap with respect to the factual discovery and expert testimony regarding these devices and services.

AT&T uses set-top boxes with digital video recording capabilities from both Cisco and Motorola, whereas Verizon has deployed only Motorola boxes. Even as to the Motorola set-top boxes, AT&T and Verizon have deployed different models with distinct internal hardware and software components. *See* Motorola (Blum) Decl. ¶ 4. AT&T uses the Motorola VIP1225 and VIP1216 set-top boxes, which use central processing chips manufactured by Sigma, Windows CE version 5.0 operating system software, and Microsoft Mediaroom middleware. *See id.* ¶¶ 6-7. Verizon uses the Motorola QIP7216, QIP6416, and QIP2708 set-top boxes, which use central processing chips manufactured by Broadcom, Mentor Graphics Versatile Realtime Executive operating system software, and Motorola DCT API middleware. *See id.* ¶¶ 5, 7. The Verizon set-top boxes contain a tuner adapted to receive video programming transported using Quadrature Amplitude Modulation ("QAM"), whereas the AT&T boxes do not contain a QAM tuner but instead receive video in IP format. *See id.* ¶¶ 5-6. The AT&T and Verizon set-top boxes also use different technologies to enable communications between multiple set-top boxes

in a premises, such as to provide multi-room digital video recording capabilities; the AT&T

boxes communicate using technology based on the Home Phone Network Alliance , whereas the

Verizon boxes communicate using a specification developed by the Multimedia over Coax

Alliance. *See id.* ¶ 8. In sum:

| | Verizon | AT&T |
|---|---|---|
| **Manufacturer** | Motorola | Cisco, Motorola |
| **Models** | QIP7216, QIP6416, QIP2708 | VIP1225, VIP1216 |
| **Central Processor** | Broadcom chips | Sigma chips |
| **Video tuner/transport** | Quadrature Amplitude Modulation | No QAM tuner. Internet Protocol instead |
| **Operating System** | Mentor Graphics Versatile Realtime Executive | Microsoft Windows CE version 5.0 |
| **Middleware vendor** | Motorola | Microsoft |
| **Multi-room distribution** | Multimedia-over-Coax Alliance based | Home Phone Network Alliance based |

Thus, *none* of the allegedly infringing hardware and software for the AT&T and Verizon

boxes is the same. Such differences in technology can be determinative, as borne out by the

*TiVo v. Echostar* litigation. That case involved two types of set-top boxes – the "Broadcom"

digital video recorders and the "50X" digital video recorders – which were distinguished by the

central processing chips and associated software used in the boxes. In that case, the jury found

that both types of devices literally infringed the asserted "hardware claims" of the '389 patent.

*TiVo, Inc. v. Echostar Communications Corp.*, 516 F.3d 1290, 1294 (Fed. Cir. 2008). On appeal,

however, the Federal Circuit reversed this determination, but on different technical grounds for

each type of box – that the Broadcom devices did not separate the MPEG stream's video data

from its audio data, and that the 50X devices did not assemble video data and audio data into an

MPEG stream. *See id.* at 1300-02, 1304. With respect to the asserted "software claims," the jury

found that the 50X devices literally infringed the software claims, but that the Broadcom devices

infringed under the doctrine of equivalents, which the Federal Circuit affirmed. *See id.* at 1294,

1312. Thus, even with respect to Echostar alone, its two different types of boxes with different

hardware and software components resulted in mixed findings on trial and appeal.

Here, the differences between the AT&T and Verizon boxes are likely to be even greater

than between the two different types of Echostar boxes, because whereas Echostar operates a

single network that offers uniform services to its subscribers nationwide, AT&T and Verizon

operate distinct and completely different types of networks that provide different types of

services, and their respective set-top boxes and internal hardware and software components have

been adapted to and reflect those differences.

These differences dictate that the discovery directed at AT&T and Verizon will be

significantly different. Thus, there is little overlap in the two cases other than in the claim

construction issues for the three patents that will necessarily be in common for both cases,

precisely the issues that would create an ethical conflict for TiVo's counsel in the AT&T

litigation. By contrast, if the Verizon case is in a different court, then any claim constructions

issued by this Court would not be binding on a sister court and hence would not be directly

adverse to Verizon. *See ConnecTel, LLC v. Cisco Sys., Inc.*, No. 2:04-CV-396, 2005 WL

366966, at *4 (E.D. Tex. Feb. 16, 2005) (sister court "can refer to [the other court's] claim

construction," but is "not bound by [its] claim construction opinion") (citing *RF Delaware, Inc.

v. Pacific Keystone Techs., Inc.*, 326 F.3d 1255, 1261 (Fed. Cir. 2003). Accordingly, transfer of

this case is the only sensible result.

Finally, although one of the three patents asserted by TiVo was litigated previously in

this District, that fact alone is not sufficient to outweigh the other considerations in favor of

transfer. As the Federal Circuit explained, in dealing with the obverse situation, the fact that a

proposed transferee court previously has hosted litigation involving some of the patents at issue

is of minimal relevance to the transfer analysis. *See Micron Tech., Inc. v. Mosaid Techs.*, 518 F.3d 897, 905 (Fed. Cir. 2008); *accord Semiconductor Energy Lab. Co. v. Samsung Elecs., Co.*, No. 09-cv-1-bbc, 2009 WL 1615528, at *5 (W.D. Wis. June 9, 2009); *ICU Med., Inc. v. Rymed Techs., Inc.*, No. 07-468-JJF, 2008 WL 205307, at *4 (D. Del. Jan. 23, 2008); *see also Furmanite Am., Inc. v. Durango Assocs., Inc.*, 662 F. Supp. 348, 350-51 (E.D. Va. 1986) ("Since these parties are entitled to a *de novo*, impartial consideration, such prior judicial experience [involving a similar patent-infringement case to which defendants were a party] may actually be more a negative than a positive reason for transfer."). That is particularly true where, as here, the case involves "a different defendant and different products" and the "convenience factors" are otherwise significant. *ConnecTel*, 2005 WL 366966, at *3. *See also id.* (the court's previous familiarity with one of four asserted patents is neutral in analyzing administrative difficulties in transfer); *Acer, Inc. v. Technology Props. Ltd.*, Nos. C-08-877 JF, C 08-882, 2009 WL 279330, at *2 & n.8 (N.D. Cal. Feb. 4, 2009).[9]

### C.    The Public Interest Factors Favor Transfer to the District of New Jersey

Just as the § 1404 private-interest factors favor transferring this case to the District of New Jersey, so do the public-interest factors.

#### 1.    *The Interest in Having Local Interests Decided at Home Strongly Favors Transfer*

As the Fifth Circuit and this Court have recognized, "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."

---

[9] The accused AT&T and Verizon products are distinct from those at issue in the *TiVo v. EchoStar* litigation. None of the devices at issue in that case were manufactured by Motorola, and they used different software than either the AT&T or Verizon boxes. Although one type of EchoStar box used Broadcom chips, it is a different chip than those used in Verizon's boxes, and the operating system software and middleware in the EchoStar and Verizon boxes also are completely different.

*Volkswagen I*, 371 F.3d at 206.  This transfer analysis considers "the 'factual connection' that a case has with both the transferee and transferor venues."  *ATEN Int'l*, 261 F.R.D. at 125.  "Generally, local interests that 'could apply virtually to any judicial district or division in the United States' are disregarded in favor of particularized local interests."  *Id.* at 125-26.  The Federal Circuit, applying Fifth Circuit law, has instructed that if the accused product is sold nationwide but many of the witnesses and evidence are located in the transferee venue, this factor favors transfer.  *See TS Tech*, 551 F.3d at 1321 (transferring case where "there is no relevant connection between the actions giving rise to this case and the Eastern District of Texas except that certain vehicles containing TS Tech's [accused] headrest assembly have been sold in the venue," and where the majority of the identified witnesses, evidence, and events were located in the transferee forum or its neighboring state).

As explained above, the District of New Jersey is home to the accused infringers; the key non-party, Motorola, is located nearby; and the vast majority of witnesses, evidence, and events regarding the research, development, deployment, and marketing of the accused products and services are located in New Jersey and neighboring states.  The District of New Jersey has a strong local interest in this case.  *See Hoffmann-La Roche*, 587 F.3d at 1336 (the "local interest . . . remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near [the transferee] district and who presumably conduct business in that community").

By contrast, no party or known witness resides in this District.  While it is true that the accused services are sold in some parts of this District, no FiOS TV services are provided in or near Marshall, Texas.  *See* Strickland Decl. ¶ 12.  The Federal Circuit and "[t]he Fifth Circuit ha[ve] unequivocally rejected the argument that citizens of the venue chosen by the plaintiff have

28

a 'substantial interest' in adjudicating a case locally because some allegedly infringing products found their way into the Texas market." *Nintendo*, 589 F.3d at 1198 (quoting *Volkswagen II*, 545 F.3d at 317-18 and *TS Tech*, 551 F.3d at 1321); *see MedioStream*, 2009 WL 3161380, at *5 ("The fact that they are sold into Texas or into this district does not give this court more of a local interest in deciding this case than any other district court.").

Because Defendants have significant connections to New Jersey, and "[n]o parties, witnesses, or evidence have any material connection to" the Eastern District of Texas, "the record leaves only the conclusion that the local interest in [New Jersey] clearly favors transfer." *Nintendo*, 589 F.3d at 1198; *see also TS Tech*, 551 F.3d at 1321; *Hoffmann-La Roche*, 587 F.3d at 1338 ("While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, . . . if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor.").

### 2.    *The Remaining Public-Interest Factors Are Neutral*

The remaining public-interest factors – administrative difficulties flowing from court congestion, the familiarity of the forum with the law, and the avoidance of unnecessary problems or conflicts of laws or in the application of foreign law – are all neutral and do not weigh strongly in favor or against transfer.

The speed to which a case can be disposed of or come to trial is a factor to be considered in the transfer analysis. On average, cases are disposed of or go to trial in roughly the same time frame in the District of New Jersey as they do in the Eastern District of Texas. The District of New Jersey is slightly faster to disposition than the Eastern District of Texas (7.9 months as compared to 9.8 months in the Eastern District of Texas). *See* Administrative Office of the United States Courts, Federal Judicial Caseload Statistics, Table C-5 (Mar. 31, 2009), *available*

*at* http://www.uscourts.gov/caseload2009/tables/C05Mar09.pdf (Mar. 31, 2009). But the Eastern District of Texas has a slightly faster median time from filing a case to trial (20.8 months compared to 29.1 months in the District of New Jersey). *See id.*[10]

Likewise, neither a familiarity with the governing law nor conflict-of-law or foreign-law issues favor keeping this case in Texas. The Eastern District of Texas and the District of New Jersey are equally capable of applying patent law. *See TS Tech*, 551 F.3d at 1320 (concluding that because patent claims are governed by federal law, all district courts are capable of applying patent law to infringement claims). And there are also no issues regarding conflicts of law or application of foreign law that affect whether this case should be transferred.

## V.    CONCLUSION

For all of the foregoing reasons, the District of New Jersey is clearly more convenient to the parties and potential witnesses and in the interest of justice. Verizon's motion to transfer venue should be granted.

---

[10] Even if the pace of litigation was slower in the District of New Jersey, that fact alone would not justify denial of the motion to transfer. *See Fifth Generation Computer Corp. v. IBM*, No. 9:08-CV-205, 2009 WL 398783 (E.D. Tex. Feb. 17, 2009) (granting transfer even though the transferee venue was very congested and cases would take twice as long to reach disposition). As the Federal Circuit recently stated, where, as here, "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *Genentech*, 566 F.3d at 1347.

Dated:  March 2, 2010                    Respectfully submitted,

                                         /s/  Clyde M. Siebman
                                         Clyde M. Siebman (State Bar No. 18341600)
                                         SIEBMAN, BURG, PHILLIPS  & SMITH LLP
                                         Federal Courthouse Square
                                         300 N. Travis Street
                                         Sherman, TX 75090
                                         Tel: (903) 870-0070
                                         Fax: (903) 870-0066
                                         clydesiebman@siebman.com

                                         Mark C. Hansen, *pro hac vice*
                                         Michael K. Kellogg, *pro hac vice*
                                         John Christopher Rozendaal*, pro hac vice*
                                         KELLOGG, HUBER, HANSEN,
                                            TODD, EVANS & FIGEL, P.L.L.C.
                                         1615 M Street, N.W., Suite 400
                                         Washington, D.C.  20036
                                         Tel:  (202) 326-7900
                                         Fax:  (202) 326-7999

                                         John Thorne*
                                         Leonard C. Suchyta*
                                         John P. Frantz*
                                         Caren K. Khoo*
                                         Verizon Services Corp.
                                         1320 N. Courthouse Road
                                         Arlington, VA 22201
                                         Tel: (703) 351-3900

                                         *Counsel for Verizon Communications Inc., Verizon
                                         Services Corp., and Verizon Corporate Resources
                                         Group, LLC*

                                         * moving for *pro hac vice* admission


TO:     Samuel Franklin Baxter
        McKool Smith, P.C.
        104 East Houston St., Ste. 300
        Marshall, TX 75670
        sbaxter@mckoolsmith.com

        Andrea L. Gothing
        David W. Beehler

David P. Swenson
Loren L. Hansen
Ronald J. Schultz
Robins Kaplan Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
algothing@rkmc.com
dwbeehler@rkmc.com
dpswenson@rkmc.com
llhansen@rkmc.com
rjschutz@rkmc.com

Attorneys for Plaintiff
TiVo Inc.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

TIVO INC., a Delaware Corporation,

        Plaintiff,

    v.

VERIZON COMMUNICATIONS INC.,
  a Delaware Corporation,
VERIZON SERVICES CORP.,
  a Delaware Corporation, and
VERIZON CORPORATE RESOURCES
GROUP LLC,
  a Delaware limited liability company,

        Defendants.

Civil Action No. 2:09-cv-257-DF

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of March 2010, I electronically filed in compliance with Local Rule CV-5(a), the Motion To Transfer Venue, Declaration of Evan Groat, Declaration of Bill Blum, Declaration of Jane A. Schapker Declaration in support for Defendants' Motion To Transfer, Declaration of Shawn M. Strickland Declaration in support for Defendants' Motion To Transfer, Declaration of Evan T. Leo in support of Defendants' Motion To Transfer, Certificate of Conference, and Proposed Order in connection with the above-captioned matter with the Clerk of the United States District Court for the Eastern District of Texas, Marshall Division using the CM/ECF system, which sent notification of such filing on all counsel who has consented to electronic service.

                                     /s/ Clyde M. Siebman
                                     Clyde M. Siebman

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| TIVO INC., a Delaware Corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>VERIZON COMMUNICATIONS INC.,<br>  a Delaware Corporation,<br>VERIZON SERVICES CORP.,<br>  a Delaware Corporation, and<br>VERIZON CORPORATE RESOURCES<br>GROUP LLC,<br>  a Delaware limited liability company,<br><br>        Defendants. | Civil Action No. 2:09-cv-257-DF |

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h), the undersigned hereby certifies that counsel for Defendants, Michael K. Kellogg, conferred with counsel for Plaintiff TiVo Inc., David Swenson and Loren Hansen, by telephone on February 22, 2010, in a good faith effort to resolve the issues raised in this motion and was unable to do so.  TiVo did not consent to this motion to transfer.

/s/ Clyde M. Siebman
Clyde M. Siebman