IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| TIVO INC., | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | |
| | § | **CIVIL ACTION NO. 2:09-CV-257** |
| VERIZON COMMUNICATIONS, INC., et | § | |
| al. | § | |
| | § | |
| **Defendant.** | § | |

# O R D E R

Before the Court is Defendants' Amended Motion to Transfer Venue to the District of

New Jersey.  Dkt. No. 46.  Also before the Court are Plaintiff's Response, Defendants' Reply,

and Plaintiff's Sur-Reply.  Dkt. Nos. 55, 71, and 80, respectively.  The Court held a hearing on

the matter on July 1, 2010.  Dkt. No. 98 (hearing minutes).  Having considered all relevant

papers and pleadings as well as the arguments of counsel, the Court finds that Defendants'

Motion to Transfer should be **denied.**


# I. BACKGROUND

Plaintiff TiVo Inc. ("TiVo" or "Plaintiff") initiated this patent infringement suit August

26, 2009 against Verizon Communications, Inc. alleging infringement of United States Patent

Nos. 6,233,389; 7,529,465; and 7,493,015 ("the TiVo patents-in-suit").  Dkt. No. 1.  The TiVo

patents-in-suit generally relate to digital video recording ("DVR") devices and software.  On

February 2, 2010, TiVo amended its complaint to add defendants Verizon Services Corp. and

Verizon Corporate Resources Group, LLC.  Dkt. No. 18.  Defendants Verizon Communications

Inc. ("VCI"), Verizon Services Corp. ("Services Corp."), and Verizon Corporate Resources

Group LLC ("Corporate Resources Group") (collectively "Verizon" or "Defendants") answered

and also asserted counterclaims of patent infringement of six patents.  Dkt. Nos. 27 (Answer and

Counterclaims) & 44 (Amended Answer and Counterclaims).  Verizon alleges that TiVo

infringes United States Patent Nos. 5,410,344; 5,635,979; 5,973,684; 7,561,214; 6,367,078; and

6,381,748 ("the Verizon patents-in-suit").  Verizon now moves to transfer the above-captioned

cause to the United States District Court for the District of New Jersey under 28 U.S.C.

§ 1404(a).

## II. LEGAL PRINCIPLES

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of

justice, a district court may transfer any civil action to any other district or division where it

might have been brought."  28 U.S.C. § 1404(a).  Section 1404(a) presupposes that the action has

been brought in a proper venue but authorizes its transfer to another proper district that is more

suited to the convenience of witnesses and the needs of justice.  The Supreme Court has noted

that § 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer

according to an "individualized, case-by-case consideration of convenience and fairness."

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Van Dusen v. Barrack*, 376 U.S. 612,

622 (1964).  The defendant has the burden to show "good cause" that transfer is appropriate.  *In*

*re Volkswagen*, 545 F.3d at 314 ("[I]n order to support its claim for a transfer, [defendant] must

satisfy the statutory requirement and *clearly demonstrate* that a transfer is for the convenience of

parties and witnesses, in the interest of justice." (emphasis added)).

The Fifth Circuit has made clear that the first determination a district court must make is whether the claims might have been brought in the suggested transferee district. *Id.* at 312-13. After such a determination, the district court must then consider the convenience of the parties in both venues. *Id.* at 314-16; *see also J2 Global Commc'ns Inc. v. Protus IP Solutions, Inc.*, Civil Action No. 6:08-CV-275, 2008 WL 5378010, at *3-6 (E.D. Tex. Dec. 23, 2008) (J. Love). A convenience determination is essentially a balancing of the inconveniences that will transpire as a result of the plaintiff's choice of venue. This balancing of conveniences involves the examination of several private and public interest factors, none of which has dispositive weight. *In re Volkswagen*, 545 F.3d at 315. The private factors address (1) the availability of sources of proof, (2) the court's ability to secure witnesses' attendance, (3) the expense associated with witnesses' attendance, and (4) all other factors relevant in conducting an expeditious and inexpensive trial. *Id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501(1947)). The public convenience factors address (1) administrative issues and the congestion of the courts' dockets, (2) the local interest in having the dispute decided locally, (3) the courts' familiarity with the controlling law, and (4) the potential conflicts of law issues that may arise. *Id.*

### III. DISCUSSION

As an initial matter, TiVo does not dispute Verizon's position that this action might have been brought in the District of New Jersey. Despite arguing that Verizon similarly chose to file its permissive patent infringement counterclaims in this Court, TiVo concedes that it could have filed its own infringement suit against Verizon in the District of New Jersey. Dkt. No. 55 at 17. Therefore, the Court proceeds to consider the private and public interest factors.

## A. Relative Ease of Access to Sources of Proof

Verizon argues that there is no documentation in the Eastern District of Texas while "the vast majority of the relevant documents are located at Verizon's main campus in Basking Ridge, New Jersey." Dkt. No. 46 at 29.  Defendants add that other evidence is located in Horsham, Pennsylvania at a Motorola facility. *Id.*  According to Defendants, this Motorola evidence will likely include examples of the accused DVR devices as well as documents. *Id.*

In response, TiVo argues that because Verizon has also accused it of patent infringement, relevant documents also exist in California and elsewhere. Dkt. No. 55 at 21.  Further, TiVo submits, "myriad sources of proof exist in Texas, including in the Eastern District." *Id.* Specifically, TiVo submits that the following evidence resides in Texas:

(1) the vast majority of TiVo's inventory, apparently accused of infringement;

(2) a number of party witnesses for both parties;

(3) documents stored at Verizon's Texas facilities that relate to the launch of FiOS TV;

(4) potential non-party witnesses, including two named inventors;

(5) documents of the potential non-party witnesses;

(6) the court files from the related case, *TiVo v. Echostar.*

*Id.*  Accordingly, TiVo contends, "[t]ransferring this case from Texas to New Jersey would move the case geographically even farther from significant sources of proof." *Id.* at 22.

In reply, Verizon argues that the documents stored at Verizon's Texas facilities that relate to the launch of FiOS TV in Texas do not constitute a relevant source of proof. Dkt. No. 71 at 9. Verizon, however, does not address TiVo's alleged infringement of the Verizon patents-in-suit and the sources of proof related to those allegations other than to argue that TiVo offers no

explanation of how TiVo's distribution is relevant.  *Id.*  In sur-reply, TiVo emphasizes that its

inventory is distributed from Texas with over 25 witnesses living in Texas, including non-party

witnesses.  Dkt. No. 80 at 8.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the

accused infringer.  Consequently, the place where the defendant's documents are kept weighs in

favor of transfer to that location."  *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)

(quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)).

This case differs from previous cases because both parties are "accused infringers."  TiVo does

not  dispute that the relevant evidence regarding Verizon's alleged  infringement of the TiVo

patents-in-suit resides in New Jersey and in Pennsylvania.  Similarly, Verizon does not appear to

dispute that relevant evidence regarding TiVo's alleged infringement exists in California and

Texas.  Verizon's principal disagreement seems to be that the documents stored at Verizon's

Texas facilities that relate to the launch of FiOS TV do not constitute relevant evidence.

TiVo's California documents would have to be shipped regardless of whether the case is

transferred or not, so their proximity to Texas does not favor denying transfer.  *Genentech*, 566

F.3d at 1346 ("[B]ecause the documents housed in Europe and Washington, D.C. will need to be

transported in any event, it is only slightly more inconvenient or costly to require the

transportation of those materials to California than Texas.").  Additionally, the court files from

the related *Echostar* case would have remained in California but for that previous litigation.  *Cf.

In re Hoffmann-La Roche Inc.*, 587 F.3d 1333,1337 (Fed. Cir. 2009) ("But, if not for this

litigation, it appears that the documents would have remained a source of proof in California.").

Unlike the case in *Genentech*, however, where no evidence was housed within Texas, the vast

majority of TiVo's accused devices along with other documentation sit in a facility in Fort

Worth, Texas.   *Genentech*, 545 F.3d at 1346 (favoring transfer when all sources of proof were in

California); *see also In re Nintendo*, 589 F.3d 1194, 1199 (Fed. Cir. 2009) (favoring transfer

when alleged infringers' evidence located in Washington state, the transferee venue, and none in

transferor venue).   The relevant evidence in this case is in California, Texas, and New Jersey.   In

*Emanuel v. SPX Corp.*, the court found that this factor only slightly favored transfer when the

relevant evidence was located in Minnesota, North Carolina, and Texas.   *Emanuel v. SPX Corp.*,

No. 6:09-cv-220, 2009 WL 3063322, at *5 (E.D. Tex. Sept. 21, 2009).   That case, though, did

not involve counterclaims of infringement, and in light of Verizon's counterclaims, the District

of New Jersey is not a venue in which relevant evidence is more accessible.[1]   Accordingly, this

factor is neutral and does not weigh in favor of transfer.

## B. Availability of Compulsory Process

This factor is concerned with a court's ability to compel non-party witnesses to attend

trial.  It will generally favor transfer when more non-party witnesses reside within the proposed

venue than in the current venue.  *Volkswagen*, 545 F.3d at 316.   At this stage of the litigation, the

Court's task is complicated because the identity and location of the non-party witnesses has not

fully crystalized. Verizon argues that this Court lacks the ability to secure the attendance of many

key non-party witnesses at depositions and at trial.  Dkt. No. 46 at 28.   Specifically, Verizon

argues that the vast majority of Motorola personnel who are involved in the research,

development, design, and marketing of the accused products are located in the Horsham,

---

[1]     To be clear, this Court does not hypothesize that the Eastern District could serve as a "centralized location."  Instead, it is undisputed that relevant evidence is located on both coasts as well as in Texas such that relevant evidence would have to be transported regardless of venue.

Pennsylvania area, which is well within the District of New Jersey's subpoena power.  *Id.*

Verizon adds that there are no known non-party witnesses who reside within the Eastern District,

while there are witnesses subject to the transferree's subpoena power.  *Id.*

TiVo responds that this Court's subpoena power reaches far more non-party witnesses

than the transferee's could.  Dkt. No. 55 at 23.  TiVo points to seventeen identified non-party

witnesses living in Texas, two of whom live within the Eastern District of Texas.  *Id.*.  Thus,

TiVo submits, all seventeen could be compelled to attend trial, including two named inventors on

one of the TiVo patents-in-suit who live in Austin, Texas.  *Id.*  TiVo adds that where no one

district will have absolute subpoena power over all non-party, the limited subpoena power of

each court must be compared.  *Id.* at 24.  Thus, argues TiVo, this Court could compel at least

seventeen non-party witnesses for trial and five for all purposes compared to six identified non-

party witnesses that the District of New Jersey could compel for all purposes.  *Id.* at 24-25.

In reply, Verizon argues that TiVo does not dispute that seven non-party Motorola

witnesses could be compelled in the District of New Jersey.  Dkt. No. 71 at 9.   Further, Verizon

contends that fourteen of the seventeen non-party witnesses identified by TiVo "have no

connection to this litigation other than that they are inventors of a handful of the hundreds of

prior art references cited on the face of the patents."  *Id.*  According to Verizon, "TiVo has

plucked out 14 who may live in Texas (only two of whom live in this District), without offering

any explanation of how the prior art of these particular inventors may bear (if at all) on the claims

in this litigation."  *Id.* at 9-10.  TiVo replies that it has identified 17 non-party witnesses living in

Texas with relevant and material information.  Dkt. No. 80 at 9.

In this case, the identified potential non-party witnesses are at least located in Horsham,

Pennsylvania and in Texas.  This factor weighs most strongly in favor of transfer when the proposed venue has absolute subpoena power over all of the non-party witnesses.  *Volkswagen*, 545 F.3d at 316-317.  While the identity of these non-party witnesses remains somewhat speculative, it is clear that neither this Court nor the District of New Jersey would have absolute subpoena power over all of the non-party witnesses.  To be sure, neither party disputes that this District would exercise subpoena power over some witnesses and lack such power for other witnesses or that the District of New Jersey is similarly limited in its subpoena power. Verizon argues that none of the non-party witnesses identified by TiVo are connected to the present litigation.  This factor, however, does not turn on whether a witness will be a "key witness" or provide significant testimony.  *Genentech*, 566 F.3d at 1343 ("Regarding the court's assessment that the petitioners failed to identify any 'key witnesses' within the venue, the petitioners were held to a higher standard than required by law."); *but see In re Nintendo*, 589 F.3d at 1199 ("All of the identified *key witnesses* in this case are in Washington, Japan, Ohio, and New York.") (emphasis added).  Invalidity will most likely be a relevant issue, and the specific prior art references may be relevant to demonstrating invalidity or lack thereof.  Further, the likelihood that a potential witness will testify does not have to meet some threshold.  Instead, it is enough that a party has not ruled out calling the witness at trial.  *In re Vtech Commc'ns., Inc.*, Misc. No. 909, 2010 WL 46332, at *2 (Fed. Cir. Jan. 6, 2010).

In this case, unlike *Genentech* and *Nintendo*, several non-party witnesses live in Texas. Thus, both the transferor and transferee forums have usable subpoena power.  The determination, then, is which court's subpoena power is "more likely to compel testimony from non-party witnesses in their respective districts."  *Emanuel*, 2009 WL 3063322 at *6.  As only two of the

non-party witnesses reside in this District or within 100 miles of this courthouse compared to seven in the District of New Jersey, the transferee venue has more usable subpoena power. *Genentech*, 566 F.3d at 1345 ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer[.]").  Accordingly, this factor weighs in favor of transfer.

### C. Cost of Attendance for Willing Witnesses

The convenience for and cost of attendance of witnesses is a very important factor. *Genentech*, 566 F.3d at 1343; *Nintendo*, 589 F.3d at 1198.  This factor weighs in favor of transfer when the parties and witnesses are localized in or near the transferee district and none are located in the transferor district.  *Genentech*, 566 F.3d at 1343.  To analyze this factor, the Fifth Circuit employs the "100-mile" rule.  Under this rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Volkswagen*, 545 F.3d at 317.  "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment."  *Id*.  In light of recent case law, the focus of the inquiry appears to be the U.S. witnesses, as foreign witnesses will be required to travel a significant distance no matter where they testify.  *Genentech*, 566 F.3d at 1344; *see also Novartis Vaccines and Diagnostics, Inc. v. Wyeth*, No. 2:08-cv-067, 2010 WL 1374806, at *2 (E.D. Tex. Mar. 31, 2010) ("When applying the 100-mile rule, a court should not place too much weight to the relative inconvenience for overseas parties and witnesses."); *but see Nintendo*, 589 F.3d at 1199 (discussing that the Japanese witnesses would have to travel an additional 1,756 miles or 7 hours

by plane to Texas than to Washington state).  In cases where the witnesses are distributed, the theory that a forum could serve as a centralized location has been rejected.  *See Genentech*, 566 F.3d at 1345; *see also Nintendo*, 589 F.3d at 1199 (citing *Genentech*).

In this case, Verizon argues that no party to this case resides in Texas.  Dkt. No. 46 at 23. Most of the decisions regarding the development, design, and marketing of the accused devices were made in New Jersey, Verizon argues.  *Id*.  In support, Verizon submits a table showing six witnesses that work in New Jersey, one that works in both New Jersey and New York, and one that works in New Jersey and Texas.  *Id*. at 14-15.   Verizon adds that those TiVo witnesses with knowledge bearing on Verizon's counterclaims are located in California and would have to travel a significant distance no matter where they testify.  *Id.* at 26.

In response, TiVo argues that despite Verizon's under-reporting, both parties boast a significant Texas presence with a plethora of potential witnesses living in Texas.  Dkt. No. 55 at 10 & 25.  According to TiVo, Verizon employs thousands of people in Texas with responsibilities for FiOS TV, one of whom lives in Plano, Texas.[2]  *Id*. at 13.  TiVo adds that it employs one potential witness who lives in the Eastern District of Texas and can already list at least twelve potential Verizon witnesses living in this district or the nearby Dallas-Fort Worth metroplex.[3]  *Id*. at 13-14.  TiVo also cites another case pending in this District wherein Verizon identified eight individuals with responsibility for its FiOS network that all lived in or within 100 miles of the Eastern District of Texas.  *Id*. at 14. (citing *Red River Fiber Optic Corp. v. Verizon*

---

[2]        Plano, Texas is predominantly located in Collin County, Texas, which is within the Sherman Division of this District.  28 U.S.C. § 124(c)(3).

[3]        TiVo points to "a sales manager who services multiple accounts for TiVo nationwide," who lives in Lewisville, Texas, which is in Denton County, Texas.  Dkt. No. 55-15.  Denton County is within the Sherman Division of this District.  28 U.S.C. § 124(c)(3).

*Services Corp.*, No. 2:08-cv-215-TJW).  TiVo also argues that potential TiVo witnesses "remain

scattered about the country in locations far closer to this Court than to New Jersey," including

near TiVo's headquarters in California.  *Id.*

Verizon replies that TiVo only admits to having two employees in Texas, only one of

whom would be a potential witness.  Dkt. N. 71 at 10.  Verizon adds that the sheer number of

line technicians and call center operators are irrelevant because the question is whether any of

those employees is a potential witness.  *Id.*

Again, review of this factor is complicated because of the litigation's early state.

However, the parties' recitation of potential witnesses is at least in part undisputed.  For example,

most of the identified party witnesses in this litigation are found in Texas, California, and New

Jersey.  Additionally, there are witnesses that reside in the Eastern District of Texas.  Verizon

does not dispute that a TiVo employee lives in this District.  Nor does Verizon question his

potential as a witness to "testify to the facts that entitle TiVo to an injunction against Verizon" or

"evidence of sales data for TiVo's products."  Dkt. No. 55 at 12-13.  Verizon also does not

dispute that one of its witnesses also lives within this District.  Dkt. No. 71 at 10.  Therefore, this

case presents altogether different factual scenarios than those reviewed in *Genentech* and

*Nintendo* where no witnesses lived in Texas or this District.  *Genentech*, 566 F.3d at 1345

(finding this factor favors transfer where a substantial number of material witnesses reside within

the transferee venue and the state of California and no witnesses reside within the Eastern

District of Texas); *Nintendo*, 589 F.3d at 1199 (finding this factor favors transfer where "[n]o

witnesses live in Texas").  Primarily, there are several witnesses, including inventors, living in

Texas and at least two party witnesses that reside in this District.  Therefore, unlike previous

cases, there is a relevant connection between this case and the Eastern District.  *Cf. Vtech*, 2010 WL 46332 at *2 (denying transfer in part because at least one witness lived in the Eastern District).  Further, there appear to be just as many party witnesses closer to this District as there are party witnesses closer to New Jersey.  And finally, while the California witnesses would have to travel in any event,  it would be just as inconvenient for the Texas witnesses to travel to New Jersey as it would be for New Jersey witnesses to travel to Texas.  On balance, therefore, this factor is neutral and does not weigh in favor of transfer.

### D. Other Practical Considerations

This factor concerns problems that make trial of a case easy, expeditious and inexpensive.  Verizon primarily argues that no practical problems exist in transferring this case to the District of New Jersey.  Dkt. No. 46 at 29.  To the contrary, Verizon submits that two significant issues will be resolved by transferring this case.  First, Verizon argues, transferring this case "may eliminate a serious ethical conflict that otherwise might require disqualification of TiVo's counsel in its separate litigation against AT&T now pending in this Court."  *Id*.  According to Verizon, it is an existing client of Irell & Manella, LLP, which represents TiVo in the AT&T case.[4]  "Allowing the two cases to proceed in the same Court would inevitably bring TiVo's counsel in the AT&T litigation into consultations, decision, and actions that are directly adverse to Verizon," Verizon submits.  *Id*.

Second, Verizon argues that a federal court in the District of New Jersey would have personal jurisdiction over all three defendants while this Court lacks personal jurisdiction over at least one defendant, VCI.  *Id*. at 19.  Verizon argues that VCI has no contacts with Texas "much

---

[4]        *See TiVo Inc. v. AT&T Inc*, Case No. 2:09-cv-259-DF, filed Aug. 26, 2009.

less the 'continuous and systematic' contacts required for general jurisdiction." *Id*. at 20. Verizon adds that TiVo cannot show that VCI purposefully directed any activities towards Texas residents to establish specific jurisdiction. *Id*.

At first blush, Verizon's arguments seem plausible; however, upon closer scrutiny, these arguments lack merit and do not affect the transfer calculus. First, the purported ethical conflict created by an attorney's or firm's representation of a party is not part of the present analysis. In other words, whether Verizon has met its burden to show that another venue is clearly more convenient does not turn on who represents TiVo. The parties' attorneys are not a factor to be considered for transfer purposes. *Cf. In re Horseshoe Entertainment,* 337 F.3d 426, 434 (5th Cir. 2003) (parties' attorneys' convenience not a factor to be considered). Further, transferring the case to another district would not cure the purported conflict. To be sure, the purported conflict is more appropriately addressed in a motion to disqualify or altogether eliminated by TiVo or Verizon obtaining different representation. The *Rembrandt* case cited by Verizon was decided in the context of a motion to disqualify and does not support using a purported conflict as a factor in a transfer analysis. *See Rembrandt Technologies LP v. Comcast Corp. et al.*, No. 2:05-cv-443, 2007 WL 470631 (E.D. Tex. Feb. 8, 2007) (granting motion to disqualify).

Similarly, whether this Court has personal jurisdiction over a defendant does not affect the transfer calculus. Admittedly, the relevant inquiry is whether the transferee venue would have personal jurisdiction over defendants. *See Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984). Verizon, however, offers no support for its position that the absence of personal jurisdiction as to one defendant among several warrants transfer of the entire

-13-

case.[5]  Moreover, Verizon's position does not accord with the prevalent practice of severing

claims as to parties over which the proposed transferee district would lack jurisdiction.  *See, e.g.,*

*LG Electronics, Inc. v. Asustek Computers*, 126 F. Supp. 2d 414, 421-422 (E.D. Va. 2000)

("When jurisdiction in a transferee district is not proper for a defendant who is only indirectly

connected to the main claims, the transferor court may sever the claims as to that defendant, and

transfer the remaining claims to a more convenient district pursuant to 28 U.S.C § 1404(a).").[6]

Finally, the argument that a court lacks personal jurisdiction is best presented in a motion to

dismiss under Fed. R. Civ. P. 12(b)(3) as VCI has done before.  *See, e.g.,* Dkt. No. 46 at n.7

(citing four Eastern District of Texas cases in which VCI moved to dismiss based on a lack of

personal jurisdiction).

In sum, neither the purported lack of personal jurisdiction over one of the defendants nor

the potential conflicts created by counsels' representation bear on whether Verizon should obtain

the relief sought by the present motion.  Accordingly, this factor is neutral and does not weigh in

favor of transfer.

### E. Administrative Issues and the Courts' Congestion

Verizon argues that this factor is neutral.  Dkt. No. 46 at 35.  TiVo submits that "[o]ver

the last six years, cases regularly reach trial faster in the Eastern District of Texas than in the

---

[5]  To be clear, the Court does not here decide whether it lacks personal jurisdiction over VCI. It is interesting, however, that Verizon aligns itself with its affiliates for ethical conflict purposes, *see* Dkt. No. 71 at 5-6, while contemporaneously distancing itself from the same affiliates in arguing an absence of personal jurisdiction, *see id.* at 11. Resolution of this inconsistency is not required as neither issue affects the transfer determination.

[6]      Courts typically determine the propriety of severance and the transfer based on whether: (1) the severed claim is peripheral to the remaining claims; (2) adjudication of the remaining claims potentially disposes of the severed claim; and (3) § 1404(a) warrants transfer of the remaining claims. *LG Electronics, Inc.*, 126 F. Supp. 2d at 421; *see also Shifferaw v. Emson USA*, No. 2:09-cv-054, 2010 WL 1064380, at *1 (E.D. Tex. March 18, 2010).

District of New Jersey." Dkt. No. 55 at 30.  For support, TiVo offers statistics that tend to show that cases pending in District of New Jersey take nearly twice as much time to reach trial than in this District.  "To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *Genentech*, 566 F.3d at 1347.  Verizon does not dispute the statistics offered by TiVo, and it appears that this Court could dispose of the present case more quickly than if the case was transferred.  *Cf. In re Hoffmann-La Roche Inc.*, 587 F.3d 1333,1336 (Fed. Cir. 2009) (fact that transferee's less congested docket could resolve dispute more quickly favors transfer).  Accordingly, this factor weighs against transfer.

## F.  The Local Interest in Having the Dispute Decided Locally

Under this factor, transfer may be appropriate where there is "no relevant factual connection" to the present venue. *Volkswagen*, 545 F.3d at 318.  Further, a district court is to consider "those actually affected—directly and indirectly—by the controversies and events giving rise to a case." *Id.*  Verizon argues that the District of New Jersey is home to the accused infringers and that the key non-party, Motorola, is located nearby as are the vast majority of witnesses, evidence, and events regarding the research, development, deployment, and marketing of the accused products.  Dkt. No. 46 at 34.  Accordingly, Verizon submits, the District of New Jersey has a strong local interest in this case.  *Id.*

In response, TiVo argues that Verizon's accused product, FiOS TV, is only offered in fourteen states and that Verizon chose Texas to offer its accused products in the first rollout. Dkt. No. 55 at 31.  Thus, TiVo argues, "the people of Texas . . . who have had FiOS TV longer than anyone in the country, deserve to decide whether this product infringes TiVo's patents." *Id*. TiVo also submits that the TiVo's products have a strong local connection to Texas because: (1)

the citizens of Texas constitute the second largest users of TiVo products and services, and (2)

TiVo's accused products are first stored in and shipped from Fort Worth, Texas.  *Id*.  Finally,

TiVo suggests that local interest is strong because the suit calls into question the work and

reputation of several individuals residing in or near the Eastern District.  *Id*.  Specifically,

Verizon's 9,300 full time employees in Texas and the fact that the co-inventors of one of the

Verizon patents-in-suit along with the patents' prosecuting attorney still reside in Texas evinces a

strong local connection, TiVo argues.  *Id*. at 32.

Despite its employees in Texas, the development and testing of the Verizon accused

products took place in New Jersey.  It is the work and reputation of those people that is called

into question.  *Hoffmann-La Roche Inc.*, 587 F.3d at 1336.  Similarly, TiVo's accused products

were developed and tested in California, and its engineers' efforts will be called into question by

Verizon's claims of infringement.  California, thus, has an interest equal to that of New Jersey.

But the local interest of Texas is less than that of either California or New Jersey.

Plaintiff argues that Verizon's first introduced FiOS TV in Texas and only offers it in

fourteen states.  Such a connection is not insignificant.  *See In re Affymetrix, Inc*., No. 913, 2010

WL 1525010, at *2 n.1 (Fed. Cir. April 13, 2010) ( [W]here, as here, the products appear to be

sold under discrete contracts with individual distributors located in only one district, or only a

relative few districts, and where, as here, one of those districts is the chosen venue, the

connection to the chosen venue is stronger.").  On balance, however, the local interest of New

Jersey and California are stronger.  Accordingly, this factor favors transfer.

### G. The Remaining Public Interest Factors

The remaining public interest factors, the courts' familiarity with the controlling law and

the potential conflicts of law issues that may arise, are neutral and inapplicable, respectively.
They do not favor transfer.

### H.  Judicial Economy

Section 1404(a) requires that a court ruling on a motion to transfer also take into account
"the interest of justice."  28 U.S.C. § 1404(a); *see also Volkswagen*, 545 F.3d at 315 ("When
viewed in the context of § 1404(a), to show good cause means that a moving party, in order to
support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate
that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'").  The
Federal Circuit has found that, in patent cases, the "consideration of the interest of justice, which
includes judicial economy, may be determinative to a particular transfer motion, even if the
convenience of the parties and witnesses might call for a different result."  *Regents of the Univ.
of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed.Cir.1997) (citations omitted).

TiVo argues that the overriding public interest in judicial economy provides a sufficient
and dispositive reason for this Court to deny transfer.  Dkt. No. 55 at 17.  TiVo cites *In re
Volkswagen of America, Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009), for the proposition that "the
existence of multiple lawsuits involving the same issues is a paramount consideration when
determining whether a transfer is in the interest of justice."  *Id.*  TiVo contends that the efficiency
gained by having this case before the same court as the *Echostar* case and the *AT&T* case
supports denial of Verizon's motion.  *Id.* at 18.  Specifically, TiVo argues that this Court has
already construed one of the TiVo patents-in-suit and that another one of the TiVo patents-in-suit
is a continuation of the previously construed patent.  *Id.*  The third TiVo patent-in-suit lies within
"the same technology space" as the previously construed patent, adds TiVo.  *Id.*  TiVo also

points to the related *TiVo v. AT&T* matter pending before this Court that, according to TiVo, inescapably implicates similar questions of law and fact as the present case, including the same TiVo patents-in-suit. *Id*. at 19. Even though Verizon's alleged infringing devices differ from AT&T's, TiVo contends that "a partial overlap of significant issues in pending matters can be a dispositive reason for this Court to deny the motion to transfer." *Id*. at 20.

Verizon responds that neither the *Echostar* case nor the *AT&T* case support denying transfer. Dkt. No. 71 at 13. The *Echostar* case involved only one of the three present TiVo patents-in-suit and none of the accused devices and services at issue here, Verizon argues. *Id*. Verizon adds that "multiple courts, including the Federal Circuit, have rejected the notion that a court's prior handling of litigation involving a patent-in-suit should be given weight in the transfer analysis." *Id*. (citing *Micron Tech. v. Mosaid Techs., Inc.*, 518 F.3d 897, 905 (Fed. Cir. 2008)). According to Verizon, the *Volkswagen* case is inapposite because it involved "simultaneously pending" cases involving "the same patents." *Id*. at 14. Here, submits Verizon, the *Echostar* case is no longer pending and the *AT&T* case involves different accused products and services and does not include the six Verizon patents-in-suit. In sur-reply, TiVo submits that this Court has more experience with the patents-in-suit than any other district court. Dkt. No. 80 at 5. According to TiVo, "The relevant inquiry focuses on the efficiency gained by having the same court hear related matters." *Id*.

Judicial economy becomes a significant factor when a court and the parties have invested substantial resources in a case. *See, e.g.*, *Novartis Vaccines and Diagnostics*, *Inc. v. Wyeth*, No. 2:08-cv-067, 2010 WL 1374806, at *2 (E.D. Tex. Mar. 31, 2010) (finding that interests of justice weighed heavily against transfer when parties expended extensive resources before motion to

transfer filed).  Judicial economy also counsels against "a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts lead[ing] to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Volkswagen*, 566 F.3d at 1351.

Section 1404(a) requires "individualized, case-by-case consideration of convenience and fairness." *Genentech*, 566 F.3d at 1346 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805 (1964)).  TiVo overestimates the import of judicial economy in this case; that is, it is not dispositive.  Here, Verizon filed its motion to transfer before the Court conducted a scheduling conference with the parties.  Also, the *Markman* hearing will not take place until April 2011.   Additionally, the Court's familiarity with the issues is limited to the general technology and one of the nine patents-in-suit.   In other words, much heavy lifting remains. Furthermore, this case involves six additional patents and different accused products and services than the *AT&T* case.

Precisely the same issues are not pending in the *AT&T* case as are pending in this matter; however, there is no dispute that some overlap exists.  Claim construction in the present case parallels that in the *AT&T* case.  Furthermore, this Court has previously construed patents within the same technology field.  Accordingly, the Court's previous experience in the *Echostar* matter is not completely divorced from the transfer calculus.  Verizon offers *In re Zimmer Holdings, Inc.*, --- F.3d ---, 2010 WL 2553580, at *4 (Fed. Cir. June 24, 2010) to support its argument that a negligible overlap does not warrant denying transfer.  Dkt. No. 93 (Verizon's Notice of Relevant Decision).  In *Zimmer Holdings*, the Federal Circuit disagreed with the district court's conclusion that plaintiff's second suit against another defendant in the same forum favored

-19-

denying transfer.  The Court found that "the overlap between [Plaintiff's] two actions, both of which are in the infancy stages of litigation, is negligible."  *In re Zimmer Holdings*, 2010 WL 2553580, at *4.  The overlap between the *Echostar* and *AT&T* cases and the present case is not negligible.  To be sure, similar technology is involved as in the *Echostar* and *AT&T* cases, and the same three patents are asserted by TiVo against Verizon and against AT&T.  *See Red River Fiber Optic Corp. v. Verizon Services Corp.*, et al., No. 2:08-cv-215, at 2 (E.D. Tex. Aug. 3, 2010) (order denying motion for reconsideration) (finding an overlap of issues for claim construction allowing the Court to take advantage of built-in efficiencies).

In short, while this Court's previous experience in the *Echostar* case and the currently pending *AT&T* case do not alone dispose of this motion, the Court's past experience is not negligible and the overlap of issues weighs against transfer.

## IV. CONCLUSION

After review of the private and public factors, Verizon has failed to show that the District of New Jersey is a clearly more convenient forum to adjudicate this case.  Unlike other cases, the evidence and witnesses are not localized around the transferee venue making that venue clearly more convenient for those involved.  Additionally, the parties' connections to Texas and this District, concerns of judicial economy, and the time to disposition weigh against transfer.[7] "[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."  *Volkswagen*, 545 F.3d at 315.  Finally, this

---

[7] The speed of the transferee district court does not alone outweigh any other factors.  *Genentech*, 566 F.3d at 1347.  Unlike *Genentech*, however, several relevant factors in this case do not favor transfer.

is not a situation where the only apparent connection with this District is the filing of a related case.  *Cf. Zimmer Holdings*, 2010 WL 2553580, at *4.

      For the reasons stated above, Verizon has not met its burden of showing that a transfer to the District of New Jersey is clearly more convenient.  Therefore, Verizon's Motion to Transfer, Dkt. No. 46, is hereby **DENIED.**

      **IT IS SO ORDERED.**

      **SIGNED this 17th day of September, 2010.**

DAVID FOLSOM
UNITED STATES DISTRICT JUDGE